NINA WILDER (CA SBN No. 100474)
Law Offices of
WEINBERG & WILDER
523 OCTAVIA STREET
SAN FRANCISCO, CALIFORNIA 94102
Telephone: (415) 431-3472
Facsimile: (415) 552-2703

Attorney for Defendant
KATHERINE PAIZ [GONZALEZ]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, ) | **No. CR-06-0710-WHA** |
| KATHERINE ELIZABETH PAIZ, ) | Date: March 7, 2008 |
| Defendants. ) | Time: 9:00 a.m.<br>Courtroom: 9, Hon. William H. Alsup |

**DEFENDANT KATHERINE PAIZ GONZALEZ'S SENTENCING MEMORANDUM [REDACTED]**

Defendant Katherine Paiz [Gonzalez] is before the Court for sentencing following her conviction by jury trial of one count of conspiracy (18 U.S.C. § 371), two counts of Wire Fraud (18 U.S.C. §§ 1343 and 2) and one count of Use of Fire to Commit a Federal Felony (18 U.S.C. §§ 844(h)(1) and 2). All charges arise from Ms. Paiz's admitted involvement in a scheme to defraud Progressive Insurance Company of approximately $30,000.00. As a result of her conviction under § 844(h)(1), Ms. Paiz is subject to a statutory mandatory consecutive sentence of ten years.

Ms. Paiz submits that this Court has the authority under 18 U.S.C. § 3553 to impose a sentence of no more than ten years on the grounds that such a lengthy term of imprisonment is in itself greater than necessary to comply with all the purposes of sentencing, and is in itself disproportional to Ms. Paiz's offense.

**THE PRESENTENCE REPORT**

Ms. Paiz has reviewed the Final Presentence Report (PSR) and appreciates the thoughtfulness and compassion that inform the Probation Officer's Recommendation.
Ms. Paiz's only objection to the draft PSR was that the amount of the loss used to calculate her offense level was greater than either the intended pay-off by Progressive Insurance or the amount she believed she still owed Bank of America, approximately $29,000, based on her last statement. Using the lower loss amount would result in a two-level reduction in Ms. Paiz's guideline from Level 13 to Level 11. That being said, the Probation Officer states that he confirmed the outstanding loan balance with the Bank and it is slightly over $30,000. Ms. Paiz has no further objections to the guidelines calculation in the PSR.

Ms. Paiz has only two corrections to the Final PSR: first, at page 12, ¶ 59, the report misstates the year of Luis Gonzalez Jr.'s birth as 2006, when it is 2007. Second, at page 13, ¶ 64, the report suggests that Ms. Paiz used alcohol and marijuana equally to self-medicate. However, as Dr. Jo Gilbert's evaluation makes clear, Ms. Paiz's primary substance abuse risk is alcoholism, not drug use. This difference, though inconsequential for purposes of sentencing, may have some future significance for conditions of supervision.

These are small points compared with the overriding issue which is the determination of a reasonable and sufficient total sentence under § 3553.

**SECTION 3553(a) FACTORS**

Ms. Paiz's guideline range under U.S.S.G. § 2B1.1(b)(1)(D) is 15-21 months. Adjusted Offense Level 13. Criminal History Category II.[1] The PSR recommends a guideline sentence of 6 months together with the 120 months required by § 844(h) for a total sentence of 126 months.

This recommendation is based on the following mitigating considerations: Ms. Paiz is the mother of a seven-month old child whose formative years she will miss. As the letters from her family attest, Ms. Paiz is a devoted mother who has made great strides in reforming her life as a result of her pregnancy and birth of her son. As her sister, Victoria Baccus writes:

> When [Katie] became pregnant she was scared, but really excited to become a mother. I've never seen her so happy before. Even when things were looking down on her, she was still happy for this baby, and I think that is what has kept her strong through all of this. I came to visit and meet my nephew for the first time and I was overwhelmed with the changes in my sister. It was a complete turn around from when I had last seen her. I am very proud of her. I am proud that she wants the best for her child, and I am proud of what a strong mother she is.

(See attached letter.)[2]

Ms. Paiz and Mr. Gonzalez have wisely decided to give temporary guardianship of Luis Jr. to Ms. Baccus and her husband, who is in the military. They currently reside at Hulburt Field in Florida, but are trying to transfer closer to the Bay Area on the assumption that Ms. Paiz will be housed at FCI or FPC Dublin. When, or even whether, they will be able to transfer is unknown. Consequently, every additional day in custody matters deeply to Ms. Paiz. As Ms. Paiz sadly

---

[1] The Application Notes to U.S.S.G. § 2K2.4, which address the interplay between the Guidelines and §§ 924(c) and 844(h), prevent double-counting by providing that the underlying offense level will not be enhanced for the same facts that trigger the statutory mandatory minimum consecutive sentence. *Cf. United States v. Working*, 287 F.3d 801, 807 (9th Cir. 2002).

[2] Ms. Paiz has attached only her own letter and the letters of Victoria Baccus and Christopher Paiz. She expects that other letters and the psychological evaluation were submitted with the PSR.

relates in her own letter to the Court, attached hereto,

> I am very thankful for my son Luis Jr. He has had a huge impact on my life and has changed it for the better. Before, my actions only affected me, but now they affect him too. I love my son very much and it hurts me to know that my previous mistakes are impacting his life so severely. Being separated from him is the worst punishment of all. I'm going to miss an important part of his life and I won't be there when he needs me the most. I do hope he will be able to forgive me.

(See also Letter of Christopher Paiz attached hereto)

[ * * * ]

In *United States v. Menyweather*, 447 F.3d 625 (9th Cir. 2006), the Ninth Circuit approved a pre-*Booker* sentencing departure under the "then-mandatory guidelines" based on diminished capacity and extraordinary family circumstances. In that case, the defendant had pleaded guilty to one count of mail fraud for having used government credit cards for personal purchases of between $350,000 and $500,000. At sentencing the parties agreed that the defendant's offense level was 16, Criminal History Category I, resulting in a sentencing range of 21 to 27 months. The district court departed downward by eight levels, resulting in a sentencing range of 0 to 6 months. The court then sentenced the defendant to five years of probation, upon the condition that she serve 40 days of her sentence on weekends in "a jail-type institution." *Id.* at 628.

The departure was based on a diagnosis of Post Traumatic Stress Disorder based on two events: the defendant's abandonment by her parents and the violent murder of her fiancé, as well as on the unusually important role the defendant played in the life of her 11 year old daughter. *Id.* Applying the *Koon* abuse of discretion standard, the appeals court concluded that the district court did not abuse its discretion in departing downward under the Guidelines, but even if it did abuse its discretion, any error was rendered harmless by the court's expanded authority to consider circumstances related to the sentencing factors in § 3553(a).[3] *Id.* at 631; *United States v. Booker*, 543 U.S. 220 (2005); *Koon v. United States*, 518 U.S. 81, 98-100 (1996).

The circumstances warranting a reduction of Ms Paiz's guideline sentence are equally

---

[3] It may be noted that the *Menyweather* panel consisted of Judges Kleinfeld, Hawkins and Graber – and not Judge Reinhardt, whose opinions are sometimes discounted as unrepresentative of prevailing Circuit law.

compelling in this case, the more so because even with the reduction Ms. Paiz will still be serving a ten-year term of imprisonment.

Under the mandatory guideline regime the court was not permitted to depart downward to take into account the impact of a statutory consecutive minimum sentence. *Working, supra*, 287 F.3d 801. In *Working*, the district court imposed a sentence of *one day* for assault with intent to commit first degree murder in consideration of a mandatory five year consecutive sentence under § 924(c). *Id.* at 807. The Ninth Circuit reversed the departure for an abuse of discretion because, as noted above, the Guidelines already took into account the impact of the statutory mandatory sentence. *Id.* at 807.

In contrast, a sentence imposed *post-Booker* is a unitary sentence subject to the criteria set forth in § 3553(a), not a combination of independent mandatory sentences as before. Thus, the rationale of *Working* no longer applies. Moreover, in light the Supreme Court's recent decisions in *Kimbrough v. United States*, 128 S.Ct. 558 (2007) and *Gall v. United States*, 128 S.Ct. 586 (2007), affirming the breadth of sentencing discretion restored by *Booker*, a district court has the freedom to deviate from the Guidelines based solely on its disagreement with the severity (or conversely lack of severity) of the prescribed sentence. *Kimbrough*, 128 S.Ct. at 573-74. Accordingly, this Court has ample authority to reduce Ms. Paiz's guideline sentence as far as needed to meet the objectives of § 3553.

The government may well contend that such a departure would defeat the intent of Congress that a sentence under § 844(h) be imposed consecutive to the sentence for the underlying offense. However, Ms. Paiz would readily counter that there is no indication Congress intended that § 844(h) should be used to aggravate the sentences of defendants, such as Ms. Paiz, who have committed a fairly commonplace offense, albeit one that involved the use of fire. Unlike the parallel provision in § 924(c), which limits the consecutive penalty enhancement to specified violent or drug trafficking offenses, § 844(h) is open-ended. It thereby leaves it entirely to the government to determine when to seek the harsh statutory penalty. Without the § 844(h) charge, Ms. Paiz would have faced a post-trial sentence ranging from a maximum of 46

months to a minimum of 21 months under U.S.S.G. § 2K1.4(a)(2) or (a)(3). Instead, the government is seeking a sentence of 135-141 months for an emotionally injured 23-year old new mother who was involved in a failed $30,000 insurance fraud. That is unconscionable.[4]

Based on all these considerations, Ms. Paiz respectfully requests that the Court impose a sentence of 10 years and one day and to recommend the 500-hour "DAP" substance abuse program. In addition, Ms. Paiz requests that the Court permit her to voluntarily surrender, as recommended in the PSR, or at the very least, remain at liberty to attend to two critical matters. The first is to follow through with the Petition for Temporary Guardianship. The second is to resolve her pending state case. If that case is not resolved before Ms. Paiz enters federal custody, a warrant will issue and she will not be eligible for any reductions in the length of imprisonment for participation in designated programs, or for release to a half-way house at the end of her sentence.

If remanded at the time of sentencing, moreover, Ms. Paiz will be confined at Santa Rita Jail until she is designated and transported across the fence to FCI Dublin. She will not be eligible for camp placement. More importantly, it is difficult to predict how long Ms. Paiz will be separated from her son before her sister is able to visit the area again. Under the circumstances, it would be cruel to separate her from him any sooner than is necessary.

///

///

///

---

[4] By way of comparison, it may be noted that two of the defendants in a major terrorism case were sentenced, after a three-month trial, to 15 years and eight months and 12 years and eight months respectfully for recruiting, financing and providing propaganda for Islamic extremist groups. *See United States v. Padilla, et al.*, 04-CR-60001 MGC (So. Dist. Fla.).

## CONCLUSION

For all the foregoing reasons, it is respectfully submitted that the appropriate sentence in this case is 10 years and one day. Any longer term of imprisonment would be substantially greater than necessary to achieve the purposes of sentencing – that is, to reflect the seriousness of the offense, to afford adequate deterrence and protect the pubic, and to provide Ms. Paiz with the treatment needed to heal the pain that has so tragically and wastefully derailed her life.

Dated: March 5, 2008                                            Respectfully submitted,


                                        /s/ Nina Wilder
                                      NINA WILDER
                                      Attorney for Defendant
                                      KATHERINE PAIZ [GONZALEZ]

# ATTACHMENTS

Dear Honorable William H. Alsup,

For many years I have had problems with depression and alcohol. Some years were better than others, but 2006 was really bad. After the death of my cousin I became really depressed and I began to drink very heavily. I was self destructive in every aspect of my life. I dropped out of my Air Force contract and turned my back on a promising career. I then moved in with Luis and his God parents who are extreme alcoholics. They owned a bar called Tijuana Mikes where we used to go and drink for free all of the time. The home we lived in always had alcohol; the refrigerator was always stocked. It was easy to drink a lot because it was normal for that house. I was going through a lot of emotional issues and instead of getting help I saw drinking as my refuge. It helped me, but it affected my judgment. I wasn't thinking clearly and I was easily influenced by others.

In May 2006 both Luis and I were arrested. I was drunk and was arrested for battery and resisting arrest. I had been bailed out but Luis stayed in custody for the next month. Because of his arrest he lost his job and I could barely afford to pay the bills. I continued to drink heavily to help me to cope with everything and with the added stress. Some time after Luis was released from custody we found ourselves and Tijuana Mikes with a bunch of people getting drunk. Some how the idea to have the car taken came up and being drunk I agreed to it. Two days later the car was taken. I didn't know that the car was going to be burned, just that it was going to be taken. I feel that because I was drunk I was easily influenced into taking part in this fraud. I'm not trying to make excuses for myself. I am just trying to explain why I think I did take part in this scheme so that I can deal with my problems.

In late 2006 I found out I was pregnant. This was not something I planned and I was scarred for the welfare of my child knowing that I was facing these charges. I stopped drinking and tried to take care of myself the best I could. I am very thankful for my son Luis Jr. He has had a huge impact on my life and has changed it for the better. Before, my actions only affected me, but now they affect him too. I love my son very much and it hurts me to know that my previous mistakes are impacting his life so severely. Being separated from him is the worst punishment of all. I'm going to miss an important part of his life and I won't be there when he needs me the most. I do hope he will be able to forgive me.

I understand that I have been convicted of all four counts that were filed against me and know that I face a very long sentence. It has been very hard for me and my family, but I know I must face the consequences of my actions. I am very sorry for what I have done and regret with all of my heart that I made some very stupid and irresponsible decisions. I hope that you will take into consideration my son and family when sentencing me.

Sincerely,
Katie Gonzalez
Katherine Paiz Gonzalez

Christopher Paiz
56 Danridge ct
Antioch, CA 94509
925-550-3993

The Honorable William H. Alsup
United States District Court Judge
450 Golden Gate Avenue, 19th Floor
San Francisco, CA 94102

Hello, my name is Chris Paiz I am Katie's father.
I am a meat department manager for an independent grocery store in Oakland, CA, The Village Market 5885 Broadway Terrace, 94618 510-547-3200.

Obviously I have known Katie her whole life and probably know her better than anyone. Even after her mother and I divorced about 15 years ago, I have had full custody of Kate and her two siblings.

Kate has been a remarkable scholastic student all of her life. She has been an honor roll student in grade school, Jr High and High School in the Diablo Unified School Dist. (Antioch, CA) and also almost two years at Los Medanos Jr College in Pittsburg, CA. After college her plan was to join the Air Force in fact she had sighed most of paper work with her recruiter, but wanted to finish her college requirements so she could continue her schooling to be an RN while in the service.

Kate could have or can still go in so many directions, she loved all the sciences, history class' and even though she hated English, she always got A's and B's there to Katie always excelled in sports especially softball and basket ball. She always made the all-star teams and was a great team player, she always made me a proud dad in everything she did. She is very determined girl in everything she does, always doing her due diligence in school and sports and now as a mother, she is making me proud again.

Katie is a wonderful mom, like her older sister, seemingly like out of nowhere she is an instant mom very caring and loving, bathing him nightly whether he needs it or not I guess it's a bonding thing.

This is the Katie that I know and I still find it hard to understand what happened to her in 2006. Maybe because I worked so much, I missed the warning signs that Katie had serious problems. Katie always seemed so mature that I never realized that she was not ready to move away from home and how easily she could be influenced by others. I know that Katie was devastated by the murder of her cousin Donald, but I now understand that there were many other things upsetting Kate. I am not making excuses for Katie, but I see her actions now as a cry for help.

Kate has admitted to and is willing to except what ever punishment she is due, she has accepted the fact that she will be serving time and is making arrangements with her older sister in Florida to take temporary guardianship of little Luis. She has done her due diligence and looked into the Federal Prison system and saw that she can continue her education there, I think she knows that she may never be an RN, but she has so much potential that I hope she will become an important part of our work force in the future.

My hope in writing this letter is to show the type of person Katie is and that what happened in 2006 was an anomaly in Kate's life. As a father, I am heartbroken to see Katie's life take this turn and for her to lose everything she has worked so hard for since she was a child.

Also my hope as Katie's father, is that you can help in when it comes time to sentence her that she does not spend more time than she deserves away from her son, which I know will be bad for both of them.

As you know Katie is under house arrest at my home and we have had many talks, she is well aware of her deed and of punishment to come, she is very sorry. As the days go by she grows closer to her son and is very happy to have this time with him, she is comforted to know that her sister will raise him well.

In saying all this I am hopeful that you will help Katie in anyway you can at sentencing, I know she will better serve society outside of prison than in.

Thank you for listening,
Chris Paiz
11/24/07

Victoria J. Baccus

6 Oelschlager St.

Hurlburt Field, FL

32544

November 10, 2007

The Honorable William H. Alsup

United States District Court Judge

450 Golden Gate Avenue, 19th Floor

San Francisco, CA 94102

Dear Honorable William H. Alsup,

My name is Victoria Baccus. I am a stay at home mother of three and live with my husband on a military base; Hurlburt Field in Florida. Katherine Gonzalez is my sister. There are so many wonderful things I could say about Katie that time would not allow, so I will try to be as brief as I can of what I think of my little sister.

Growing up I always thought of Katie as the strong one in the family. I can't say that I've ever seen her afraid of anything, and if she was, she was great at hiding it. She was always feisty and stubborn but was always driven to meet her goals on her own. Katie is a very proud person and hates it when her emotions take over. It takes a lot to get her to cry and when she does she tries her best to hide it. That shows me that she feels in a big way, but keeps it inside. She cares deeply for her family and gives everything she can to us. When she was younger around 13 years old, she had to put up with me and my newborn daughter. I realize now how hard it must have been for her to live in the same room as us and try and sleep and go to school. Katie was a straight A student and still found the time to help out her older sister. I took advantage of her. But I realize that was her way of giving to me. She never had the words to express, but you knew by her actions. I will be forever grateful for that.

Katie has had her moments too. Her last years in High School and after she seemed a little detached from everyone. I think she felt liberated from school but at the same time she seemed depressed or didn't exactly know where she fit in her life. I think she sort of thought of herself as an outcast. It's during these years I wish I could have been there for her. My husband and I along with our three kids were sent away to Germany for his first oversees assignment. It was very hard leaving both my brother and sister. It was always the three of us and we would watch out for each other growing up.

I would talk to her on the phone, but she would usually give short answers or would

sound like she was always distracted. My dad would say she was rarely home and some times wouldn't see for a couple nights at a time. We were very worried for her.

When Katie met her now husband, Louis, it seemed like everything changed in her. Her voice was different, it was happy. When she became pregnant she was scared, but really excited to become a mother. I've never seen her so happy before. Even when things were looking down on her, she was still happy for this baby, and I think that is what has kept her strong through all of this. I came to visit and meet my nephew for the first time and I was overwhelmed with the changes in my sister. It was a complete turn around from when I had last seen her. I am very proud of her. I am proud that she wants the best for her child, and I am proud of what a strong mother she is.

I can't imagine what it must be like for her to make arrangements for her child to be taken care of while she prepares to go to prison. It's heartbreaking to know that she felt she had no other option than to do what she did to fix her problems. I am aware of what she has done, but I also know that it was done out of desperation. Katie was young and foolish and made horrible choices, but I understand it. I think everyone has made bad choices in their lifetime. It's heartbreaking for someone who has finally found who she is and is happy with her new life to have it taken away.

Katie has shown deep regret of what she's done and I know she will always remember it, but she will learn from it and it will make her stronger. Katie also knows now that she can always come to family if she is struggling and needs help instead of doing it on her own. I love my sister very much, and all these things will never change my opinion of her.

Thank you,

Victoria Baccus

Victoria J. Baccus